# EXHIBIT 1

*Thomas Wheeler*

*v.*

*Allstate Insurance Company and Allstate Indemnity Company*

*Expert Report*

*provided by*

*Jim Leatzow*
*Leatzow & Associates, Inc.*

**January 8, 2014**

1

Submitted to:   Mr. Ronald Madson, Esq.
                Madson & Madson
                112 S. Main Street
                Alpine, UT 84004

Pertaining to:  **Thomas Wheeler**, Plaintiff (Wheeler)
                vs.
                **Allstate Insurance Company** and **Allstate Indemnity Company**
                Defendants (Allstate)

                in the United States District Court, District of Utah
                Case No. 2:12-CV-00193 SA

## Introduction

For purposes of this report, I will be referring to all of the Plaintiff Thomas Wheeler generically as "Wheeler" and the Defendants Allstate Insurance Company and Allstate Indemnity Company collectively as "Allstate" rather than individually for purposes of brevity and clarity where appropriate.

## Overview

This report is rendered as an analysis and evaluation of the course of conduct of Allstate in the handling, investigation and adjusting of a homeowner's insurance policy claim with their subsequent denial of certain benefits to the insured Thomas J. Wheeler. The information and documents on which this report and my opinions are based have been provided me by retaining counsel and are shown at the end of this report. Should additional information or discovery items become available and are provided to me, I reserve the right to amend this report and any opinions herein.

## Insurance Summary

Thomas Wheeler was the named insured listed on an Allstate Deluxe Homeowners policy (Policy #9-17-247408-08/11) issued for Wheeler to provide insurance on his seasonal, secondary residence. This policy had originally been issued some time earlier and subsequently renewed by Wheeler. The policy period covering the claim central to this dispute was in effect from August 11, 2010 to August 11, 2011.

## Statement of Opinions to Be Expressed

1. In adjusting claims an insurance company and their adjusters must begin claim adjusting from a position of assuming a claim is valid and that the facts being submitted with that claim are true until proven otherwise. Such definitive "proof" sufficient to deny Thomas Wheeler his benefits was not forthcoming and offered by Allstate. Moreover Allstate had a duty to "find coverage" if possible, yet Allstate's adjusters, first the inside adjuster and later Robert Holland as the outside adjuster, did exactly the opposite. The inside adjuster entered notes in a claim file suggesting denial based only on a call center verbal observation report from a friend of the insured and that was followed by Robert Holland remarkably declaring his intention to deny the claim *before even inspecting the property*.

2. Allstate's policy language as pertains to their specific denial of coverage to policyholder/insured Wheeler is ambiguous.

3. Allstate acted unreasonably by beginning their investigation from a position of prematurely denying coverage first via file notes made by their inside adjuster with scant information, followed by an overt decision to again prematurely deny the claim as offered in a statement made by Allstate's outside adjuster to the insured's on-site representative, *prior to even entering and inspecting the damaged property*. Allstate further acted unreasonably by then relying upon ambiguous policy language as the means for denying coverage for their insured Thomas Wheeler.

4. By acting unreasonably as described including the use of ambiguous policy language to deny benefits under Wheeler's policy, Allstate breached their duty of good faith and fair dealing which financially benefited Allstate at the expense, exclusion and to the financial detriment of their policyholder. By denying Wheeler any insurance benefits, Allstate placed their own financial interests ahead of those of their policyholder which constitutes bad faith.

## Basis for the Opinions Expressed

### Basis for Opinion #1: (Allstate had a duty to search and assume coverage)

- It is expected and important for an insurer to begin every claim adjusting process from a position and posture of providing coverage under policies involving assets of individuals who sought, paid for and bargained for coverage. That duty is most often characterized as the obligation to "search for coverage".
- There were numerous admissions throughout the testimony of the Allstate staff recognizing and acknowledging Allstate's duty to search for coverage for policyholder Thomas Wheeler.

3

- In deposition testimony, Byron Vincent, Allstate's 30(b)(6) witness presented as the "person most knowledgeable" testified on Allstate's behalf. Mr. Vincent testified that he has been Allstate's outside adjuster manager for the prior 17 years. He further testified that in that role he coaches, trains, answers policy questions and manages nine outside adjusters for his employer. Moreover Mr. Vincent testified that he has personally handled "hundreds" of water claims over the course of his employment at Allstate. When asked whether Allstate had an obligation to "search for coverage" while investigating a claim, Mr. Vincent testified that obligation existed.

- The denial of the Wheeler claim did not begin with the outside adjuster Robert Holland however. Byron Vincent testified that the inside adjuster who wrote the initial file notes based those notes upon a single phone call from Emily York, a friend of Thomas Wheeler, who initially called the claim in to Allstate. Vincent testified "this loss appeared not to be covered based on the time frame and the duration of the loss with the mold". Allstate's inside adjuster's file notes reflected information provided by a non-insurance person who was attempting to describe the existing conditions at the insured dwelling *prior to anyone visually confirming the extent of damage*. This hardly sounds like "trying to find coverage", yet Mr. Vincent, as a senior claims manager, testified "The inside adjuster could have denied it" (Vincent 14:21-22) and this decision to deny all benefits under a policy prior to any visual verification of damage or circumstances by Allstate was apparently perfectly acceptable to this senior claims supervisor.

- Yet Mr. Vincent conceded that information being received by Allstate about a claim may not be determinative when he testified "sometimes insureds don't understand what they're telling us" as an example of how a claim denial could potentially be avoided only because of the initial information provided about a claim. (Vincent 59:19-20) If insureds "sometimes don't understand what they're telling us", I believe it would be reasonable to expect further investigation by adjusters especially given the severity of this claim and the initial report coming in from an unrelated, untrained party.

- Because both the Allstate agent who sold the policy and the insured requested that the dwelling be inspected, Allstate then assigned the claim to Robert Holland, an outside adjuster who reported to manager Byron Vincent.

- Adjuster Robert Holland and his supervisor/manager Byron Vincent had no specific training regarding mold in water leak claims as confirmed by his supervisor Vincent. (Vincent 28:9 & 82:9) Yet Vincent, while opining on the amount of mold present, claimed in his deposition that Holland "would have made that decision based on the time frame it would take mold to go from a basement to every room in an upstairs home. *It would take more than a day, or a month*

4

*almost to get up there to do that.*" (Vincent 31) Vincent then went on to opine "Well, it would probably *take at least weeks for that to happen*. And that's the whole thing. *We don't know*, because no one had been in this home for – maybe since January." (Vincent 32) (emphasis added) Vincent's statement "We don't know" is an accurate confession and so it would be unreasonable for any adjuster, especially those not privy to more information to automatically assume that the damaged valve must have occurred at a previous date certain.

- It is important to also underscore that contrary to Mr. Vincent's testimony about water damage affecting a building *he never even saw*, the damage resulting from the subject water leak was never "*from a basement to every room in an upstairs home*". Of course it would be helpful to Allstate's denial if the entire dwelling was affected, but such is simply not the case as was confirmed by subsequent testimony. Only two of the three levels in the home were affected. (Wheeler 22:4-14)

- Vincent was asked a straightforward question in his deposition. "Could you say in days about how long you think it would have taken for that mold to climb up?" Vincent testified "*No, I couldn't. I couldn't say in days*." (emphasis added) (Vincent 32:24) If this senior adjuster who, like Robert Holland, was untrained to handle issues involving mold from water claims could not offer a specific time frame, I found it unreasonable that a junior adjuster with less experience could reasonably make a similar determination.

**Basis for Opinion #2: (Allstate's policy language is ambiguous)**

- The central issue in this dispute is the language found in a clause in the policy on which Allstate has relied in their denial of benefits to Thomas Wheeler. Specifically found in "Losses we do not cover".... "*Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam, or fuel, A, from a plumbing, heating, air conditioning, or automatic fire protection system, or from within a domestic appliance, or, B, from within or around any plumbing fixtures, including but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.*"

- The term "weeks" as found in that clause used to deny coverage to Wheeler is undefined in the policy. As will be revealed below, even Allstate's senior adjuster supervisor had difficulty defining precisely what that term meant before settling on his own definition which conveniently made Allstate's denial more plausible *IF* you only choose to accept his definition of that term. Insurance policies traditionally are written with specificity to avoid ambiguity to help protect the insured and the insurer alike.

5

- The Allstate policy in question offered numerous examples of policy language specificity making clear various "time certain" requirements affecting coverages under the policy. These examples plainly reveal that Allstate had the ability to make policy language clear to a policyholder or any reader of the document, for that matter, the precise and specific time requirements expected that could potentially affect or restrict coverage for the policyholder. Such is typical in policies as one would reasonably expect. Examples of clear, unambiguous, "time-certain" requirement language (with emphasis added) include:
  - (Page 5 – Cancellation) Our right to cancel: When this policy has been in effect *for less than 60 days*, and it is not a renewal with us, *we may cancel this policy for any reason* by giving you *at least 10 days notice before the cancellation takes effect*. When the policy has been *in effect for 60 days or more*, or if it is a renewal with us, we may cancel this policy for one or more of the following (4) reasons: .........
  - (Page 5 – Non-payment) If the cancellation is for non-payment of premium *we will give you at least 10 days notice*. If the cancellation is for any other reasons, *we will give you at least 30 days notice*.
  - (Page 5 – Right not to renew) If we do not intend to continue or renew the policy, we will *mail you notice at least 30 days before the end of the premium period*.
  - (Page 10 – Additional living expense) Personal Property Protection will be limited to the least of the following:
    1. the *time period required to repair or replace the property we cover*, using due diligence and dispatch;
    2. if you permanently relocate, the *shortest time for your household to settle elsewhere*; or
    3. *12 months*.
  - (Page 10 – Rental income) We will pay for lost fair rental income for the *shortest time required to repair or replace* the part rented or held for rental *but not to exceed 12 months*.
  - (Page 17 – Our Settlement Options) *Within 30 days after we receive your signed, sworn proof of loss* we will notify you of the (settlement) option or options we intend to exercise.
  - (Page 19 – Our Settlement of Loss) *We will settle within 60 days* after the amount of loss is finally determined.
  - (Page 25 – Damage to Property Of Others) .... give us a sworn statement of the loss. This *must be made within 60 days after the date of the loss*.

6

- When questioned about the specific denial of Wheeler's claim, Mr. Vincent confirmed the policy clause that was used to deny Wheeler's claim. Specifically that clause in its entirety reads *"Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years of water steam or fuel, A. from a plumbing, heating, air-conditioning, or automatic fire protections system, or from within a domestic appliance, or, B, from within or around any plumbing fixtures, including but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures designed for use of water or steam"*.
- Yet in the clause highlighted above under which Allstate chose to deny coverage, the specific language utilized by Allstate for that denial was *"weeks"*.
- Vincent was then asked to confirm the "minimum amount of time that would trigger this, this clause – exclusion under this clause?" Mr. Vincent testified "you'd have to go *exactly to what is said, weeks. So that would be more than two. Two weeks. One week, two weeks, somewhere right in there."* (Vincent 74:10-13) Here Vincent testified that "weeks would be more than two". (Vincent 80:2) Ordinary language would dictate that "more than two" could reasonably mean "three" or even "four".
- Asked "So let me just clarify that you can't put a number of days on this clause here as a minimum amount of days required to trigger this exclusion under A(3) on page 24? You can't give me an exact number of days that would trigger the exclusion as far as the duration of a leak goes?" Mr. Vincent responded "we can can define weeks as weeks." (Vincent 79:10-17)
- In attempting to further define the policy language, Vincent offered "weeks would be more than two, I would think." (Vincent 79:24-25)
- In pursuing what the words in the limiting clause meant to a senior claims manager, Mr. Vincent was then asked, given that he viewed "weeks" as being more than one week, "would 15 days have qualified for the "weeks" requirement in the clause?" Vincent responded that it would. So Mr. Vincent's prior testimony of "more than two" was now redefined by him via his own testimony to mean "15 days", even though such language appears nowhere in the Allstate policy.
- Returning back to questioning about the specific "weeks" time requirement that Allstate was basing their denial upon, Mr. Vincent claimed the operative language in order to deny coverage centered upon "weeks" which he would not quantify in perhaps 14 days, offering instead that weeks should be defined as "over two".
- Then asked if 14 days duration might have been covered seemingly short of a definition of "weeks", Mr. Vincent declined to offer an opinion, opting instead to say "I can't say for sure. That's too hypothetical." (Vincent 78) Insurance policies are never intended to be hypothetical

7

and are intended to be specific for clarity. Mr. Vincent, as a senior adjuster certainly should have been capable of offering an opinion given his vast experience, but chose not to.

- Mr. Vincent testified "its left up to our adjuster's discretion" based on whether a leak has been "seeping or leaking for a period of weeks" which still left the definition of weeks unanswered. Mr. Vincent then testified "*if it looks sudden and accidental, we would cover that.*" (Vincent 78) Plaintiff in this case submitted the damaged valve to a testing lab to determine whether the damage had been "sudden and accidental" and that laboratory confirmed it had been.
- Mr. Vincent testified that at the time of the Wheeler claim denial he (and therefore Allstate) did not know whether the water leak had been sudden and accidental. (Vincent 88:1) Therefore no coverage determination was even considered and the valve apparently wasn't even examined by Allstate as of the date of their denial in Allstate's supposed "search for coverage".
- In thinking through his just offered testimony of "weeks" meaning "over two" weeks, Mr. Vincent rethought his response in what appeared to be a near epiphany when he testified "after I thought about this – if we knew for a definitive fact that it was more than one week, which would mean "weeks", we would deny the claim". Asked to clarify his new definition of the policy clause, Mr. Vincent was asked "you would say that that meant seven days would be covered, but eight days would not be?" to which Vincent responded "Yeah". (Vincent 81:11-13)
- I decided to do my own non-scientific test to see what others viewed as a proper definition of the term "weeks" by asking four individuals at separate times what they thought it meant. The four were not prompted or coached as to why I wanted their input. Their four separate answers were:
    - "Three or more", and
    - "Several", and
    - "It all depends", and
    - "At least 21 days".

As this illustrates at least informally, an undefined term means different things to different people. If such a term is being used to limit or deny coverage under an insurance policy, it is critical that the term be given specific meaning so the potential impact can be assessed and evaluated. "Weeks" remaining undefined in the policy created ambiguity regarding the adjustment of the claim because the date the valve failed can never be determined.

8

**Basis for Opinion #3:** (Allstate acted unreasonably)

- Allstate's initial assessment and apparent intention to deny coverage to policyholder Thomas Wheeler was based upon verbal observations made on the phone by Emily York, a friend of the policyholder as she was simply guessing at how long water might have been running in the home. Given the severity of the loss, the initial reaction to deny this claim by the inside adjuster with no further investigation appears to be a rush to deny, rather than "searching for coverage".

- Once an inspection was ordered and outside adjuster Robert Holland was assigned, Mr. Holland made statements to the policyholder's representative Dirk Nelson in harmony with the inside adjuster's file, that it was his intention to deny this claim *prior to even inspecting*. Deciding to deny coverage prior to even entering and inspecting the damaged property he was tasked to inspect is clearly unreasonable.

- Since this was a very serious loss regardless of who ultimately became responsible for covering it, the Allstate file memorializes the fact that there were no pictures of the loss in the Allstate file as would be typical and expected. There was a notation stating "Does not appear the OA (outside adjuster) took photos of the inspection". (Vincent 49:4-5)

**Basis for Opinion #4:** (Allstate acted in bad faith)

- This dispute involves Allstate's rush to denial without adequate consideration of potential coverage regardless how limited. The policy provides for certain mold coverage benefits and denied those benefits.

- As described above, the "denial process" began with the inside adjuster who papered the file with an expectation of denial based essentially on hearsay and inadequate investigation. This misstep was followed by an outside adjuster announcing his intention to deny the claim prior to a physical inspection of the damaged property. Whether Allstate was responsible for $5,000 or $175,000 under the policy in this claim is irrelevant when considering whether Allstate acted reasonably in giving their insured Thomas Wheeler equal consideration they provided themselves.

**In Conclusion:**

In this dispute Allstate's call center took information from a non-insurance, personal friend of the insured who called in her observations of the dwelling's water damage claim. From there the claim was given to an inside adjuster who "developed the claim" on paper. Per the testimony of Supervisor

9

Byron Vincent, the inside adjuster, lacking any empirical evidence or information regarding whether this loss was sudden, accidental, or how long the water had even been leaking other than the guess made by Emily York, made notes in the initial claim file that the loss "*appeared not to be covered based on the time frame and the duration of the loss with the mold and things like that.*" (Vincent 14:18-20) Therefore the initial suggestion of Allstate's claim denial was based upon a water leak time frame *no one knew and could only guess*. This is important given the fact that the ultimate denial is completely based upon the amount of time the water had been leaking.

The insured and his agent then requested a physical inspection of the claim site and Robert Holland was assigned as the outside adjuster. Per the testimony of the insured's on-site representative, and his supervisor Byron Vincent. Adjuster Holland's notes from the claim state "Water has been leaking for several months." (Vincent 42:11-12) How Mr. Holland could have quantified such a statement given the minimal information he had at that moment supports the notion that he was guessing at best. Moreover Holland was untrained regarding mold damage resulting from water. In fact Robert Holland's manager Byron Vincent admitted that he could not offer a specific number of days it would have taken for mold to have become evident on the first two of three floors at the building when it was discovered. I found this interesting since the outside adjuster opined the water had been leaking for months while his manager was thinking in terms of days.

Finally, Adjuster Supervisor Vincent appeared to have difficulty during his deposition coming up with an appropriate definition of "weeks" while trying to explain and make clear the specific language that gave rise to the denial was further troubling. As Vincent seemed to realize during his testimony, unless he shortened the time frame he was initially characterizing as "weeks" as the basis for a denial to his ultimate final choice of "8 days" as his working definition of "weeks", he seemingly realized that Allstate could be in danger of incurring liability on the claim.

Although representatives of Allstate claim to have "*searched for coverage*" in this case as was their duty to do so, all information I reviewed instead points to a rushed denial based upon an ambiguous clause that is anything but clear with any reasonable reading. The date the sudden and accidental water leak occurred from the failed valve will forever be unknown, therefore Allstate claiming it had been running "8 days", or for "weeks" or for "months" will only qualify as a guess at best, especially given that no one making coverage and denial determinations had any specialty training whatsoever.

**Role of Jim Leatzow as an expert**
- I have been retained as an expert in this case.

10

- I have reviewed various pleadings, correspondence and documents presented to me and referred to in this report in forming my opinions in this case. A general list of the documents I have reviewed to date is shown below. My opinions expressed in this report are based upon:
    - A reasonable degree of professional certainty within the insurance industry, and;
    - My 37 years in the property/casualty insurance business which includes:
        - Having performed duties as an underwriter and as a Managing General Agent on a national basis for 27 years;
        - Having been previously and properly licensed in all 50 states and the District of Columbia as a property/casualty producer;
        - Having specifically been licensed in the State of Utah as a property/casualty producer for 25 years between 1982 and 2005;
        - Having performed duties as a Third Party Administrator property/casualty claims handler for 21 years on a national basis.
        - Having formed an insurance company in 1993 which I own that maintains operations insuring risks nationally in the United States.
    - My review of certain case materials provided by retaining counsel including:
        - Various pleadings:
            - Wheeler's Complaint
            - Allstate's Answer to the Complaint
            - Allstate's initial Disclosures
            - Allstate's Responses to Interrogatories
            - Allstate's Responses & Supplements to Requests for Production
        - Deposition testimony of:
            - Robert Holland, Outside Adjuster
            - Byron Vincent, Outside Adjuster Manager
            - Thomas Wheeler, Plaintiff
            - Dirk Nelson, Contractor
            - Brandon Harris
            - John Hulet
            - Emily York
            - Brent Harper
            - Lila Harper

11

## Qualifications of Jim Leatzow

See my CV which is attached to this report.

## Publications Authored by the Undersigned in the Last 10 Years

I have authored no publications in the last 10 years.

## Compensation:

I am being compensated at the rate of $300 per hour. Based on my knowledge, skill, experience, training and education, my opinions are shown above.

I am aware that discovery in this case is ongoing, has not been concluded as of this date and that additional discovery is expected. On the basis of potential expected additional discovery, I reserve the right to amend my report and any other testimony should additional information or case materials become available to me relative to this case.

Respectfully submitted January 8, 2014

Jim Leatzow, President
Leatzow & Associates, Inc.
1265 Pine Isle Road
Three Lakes, WI 54562
715-546-3300

# Jim Leatzow

## *Expert Services / Litigation Support / Insurance - Reinsurance Arbitration*



37 years of property/casualty insurance industry & agency experience
27 years national managing / underwriting general agent experience
13 years reinsurance experience
21 years national Third Party Administrator (TPA) - claims handling
25 years licensed property-casualty agent / broker in 50 states until October 2005
Licensed surplus lines broker in 46 states + D.C. until October 2005
Certified insurance & reinsurance arbitrator

**President, Leatzow & Associates, Inc. - (consulting firm) - 1975 to present**
**President, Three Lakes Insurance Co., Ltd. (reinsurer) - 1992 to present**

**Practical insurance & reinsurance industry experience including:**

- Property-Casualty **Agent / Broker / Producer** duties, obligations & standard of care
- Managing General Agent (**MGA**) / **Wholesaler** duties, obligations & standard of care
- Third Party Administrator (**TPA**) claim handling obligations & standard of care
- Qualified **bad faith expert** with testimony in state & federal courts
- **Errors & Omissions** claims handler (20 years+)
- **Coverage expert** involving appropriateness, placement & disputes involving:
    General Liability ♦ Professional Liability ♦ Property ♦ Surety ♦
    Errors & Omissions (E&O) ♦ Claims-made trigger ♦ Excess - Surplus lines
- **Construction** industry insurance placement & claims specialization (20+ years)
- **Underwriting** experience (20+ years)
- History of representing both plaintiff & defense equally in expert testimony consulting
- Provided testimony in 5 of 11 federal districts / Rule 26 Report specialization
- 160+ Expert retentions / 40+ depositions / 8 trial testimonies / 40 arbitration retentions
- Active reinsurance company officer
- **No charge for travel time, coast to coast**

**Website:** www.Leatzow.com          **Education:** B.A., Ripon College – 1969

**Professional Memberships:**
- Independent Insurance Agents & Brokers of America (IIAA)
- ARIAS Certified insurance & reinsurance Arbitrator
- Chartered Institute of Arbitrators (U.S. / U.K. / Bermuda)



1265 Pine Isle Road, Three Lakes, WI 54562
Office: 715-546-3300 / Jim@Leatzow.com
www.LEATZOW.com

(6/13)

**Leatzow's testimony at trial & deposition within the preceding four years (as of 01/08/2014):**

| # | Date | Type | Case |
|---|---|---|---|
| 1. | 01-12-10 | Deposition | Agle v. State Farm |
| 2. | 02-18-10 | Deposition | Ostrovitz & Gwinn v. First Specialty Insurance |
| 3. | 04-01-10 | Deposition | The Villa v. Trissel Graham & Toole |
| 4. | 06-02-10 | Deposition | Evanston Insurance Co. v. GT Fabricators |
| 5. | 06-23-10 | Trial | The Villa v. Trissel Graham & Toole (**State**) |
| 6. | 10-01-10 | Deposition | Hastings Mutual Ins. Co. v. Habrie |
| 7. | 01-31-10 | Deposition | Catholic Healthcare West v. CA Ins. Guarantee |
| 8. | 02-22-11 | Deposition | Williams v. Fehrenbacher Ins. Agency |
| 9. | 05-18-11 | Deposition | AutoOwners Insurance v. Thomson Construction |
| 10. | 07-15-11 | Arbitration | Iowa Municipal Insurance v. Cornhusker Casualty |
| 11. | 11-18-11 | Deposition | Go Wireless v. Northern Ins. Associates |
| 12. | 12-28-11 | Deposition | Charney v. American Family Agent Storzer |
| 13. | 02-22-12 | Deposition | Rick Bounds Auto Sales v. Western Heritage Ins. |
| 14. | 04-30-12 | Deposition | Wethey v. Zurich American Ins. Co. |
| 15. | 10-04-12 | Deposition | Arch Insurance Co. v. Allegiant |
| 16. | 11-29-12 | Deposition | IPP v. CynoSure |
| 17. | 12-06-12 | Deposition | DASNY v. KPF Associates |
| 18. | 12-14-12 | Deposition | Lloyds v. Bartle |
| 19. | 01-25-13 | Deposition | U.S.S.S.A. v. Nelson Chipman & Burt |
| 20. | 02-11-13 | Trial | U.S.S.S.A. v. Nelson Chipman & Burt (**Federal?**) |
| 21. | 03-01-13 | Deposition | Kennedy v. Wisconsin Mutual Insurance Co. |
| 22. | 03-07-13 | Deposition | American Design & Build v. Houston Casualty |
| 23. | 03-19-13 | Deposition | Secura Insurance Co. v. Jagminas |
| 24. | 06-10-13 | Deposition | Follenweider v. Assurance Agency |
| 25. | 06-27-13 | Deposition | Illinois National v. Wyndham |
| 26. | 09-09-13 | Deposition | McDaniel v. AIG |
| 27. | 09-30-13 | Deposition | Kleparek v. Gallagher Bassett |
| 28. | 10-23-13 | Deposition | Companion P&C v. Consolidated Agency |

| | | | |
|---|---|---|---|
| 29. | 10-29-13 | Deposition | Huntsman v. Marsh US |
| 30. | 12-06-13 | Deposition | Mitchell v. DynCorp International |
| 31. | 12-13-13 | Trial | Follenweider v. Assurance Agency (**State**) |
| 32. | 12-17-13 | Deposition | American Economy v. All Lines Insurance |